IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KEVIN W. WARD                                                                               PLAINTIFF

V.                                         NO: 1:15CV00068 PSH

LYNN CROSLIN                                                                              DEFENDANT

## ORDER

### I. Relevant facts

Plaintiff Kevin W. Ward ("Ward"), formerly held in the custody of the Independence County Jail ("IDJ"), filed a *pro se* civil rights complaint on June 9, 2015, naming IDJ employees Myles Massennelli ("Massennelli") and Lynn Croslin ("Croslin") as defendants. Docket entry no. 2. Service of process was never accomplished on Massennelli, and he has been dismissed from this lawsuit, leaving Croslin as the lone remaining defendant. See docket entries nos. 26 & 27.

According to Ward's complaint, he was escorted out of his IDJ cell for recreation call on February 1, 2015, by Massennelli and Croslin. He was restrained with handcuffs, belly chain, and shackles. After Ward left his cell, Croslin left and went upstairs, leaving Ward with Massennelli. According to the complaint, Massennelli refused to let Ward go outside for recreation call. Ward started to return to his cell when Massennelli allegedly pushed him in the back, grabbed him from behind in a choke hold, and slammed him to the floor. Then, Massennelli sat on top of him, placed his hand on Ward's throat and began to choke him. "Then Sgt. Croslin came and got Myles off me and put me back in my cell with no other problems." Complaint, page 4. "Sgt. Croslin should not of left me alone with Cpl. Myles for any reason." *Id.* Ward was taken to the local hospital emergency room for medical treatment after Massennelli's attack.

Croslin seeks summary judgment, filing a motion and supporting the motion with a brief and statement of facts. Docket entries nos. 32-34. Ward has responded to the pending motion. Docket entry no. 36.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. Analysis

Croslin, in his statement of facts in support of his motion for summary judgment, agrees with Ward's complaint that Croslin was not present when the incident occurred on February 1, 2015.

2

Croslin also states he "did not know or believe that Plaintiff was at risk of harm from former Defendant Massennelli and then disregard that risk of harm." Docket entry no. 32. Ward, in his response to the motion for summary judgment, provides some additional details. He states that he was returned to IDJ in January 2015 after escaping. Further, he asserts he gave statements to the U.S. Marshals, state police, and a local detective stating that Massennelli assisted in his escape. Ward reiterates that Croslin left him unattended with Massennelli on February 1, 2015, "[k]nowing that I had snitched on Massennelli Croslin neglected me." Docket entry no. 39, page 2. Ward concludes: "If Mr. Croslin had not of left me alone and left his post none of this would have happened to me. B/c why? Mr. Croslin would have been able to stop what Mr. Massennelli was doing to me. Mr. Croslin was not so Mr. Croslin should be held accountable." *Id.*

*Failure to Protect:* The focus with regard to Croslin is whether there are genuine issues of fact which support Ward's claim of failure to protect from Massennelli's alleged attack. In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Court held that, in order for a prisoner to recover against prison officials for failing to protect him, he must prove that: (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official was deliberately indifferent to that substantial risk of serious harm. In defining deliberate indifference, the Court, in *Farmer,* explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*.

*Id.* at 837 (emphasis added). Additionally, the Eighth Circuit has explained that this rigorous standard of proof is appropriate because "only the unnecessary and wanton infliction of pain

3

implicates the Eighth Amendment." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (*citing Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).

Liberally construing Ward's allegations, we ask: (1) did Croslin know of facts from which the inference could be drawn that Ward faced a substantial risk of serious harm?; and (2) did Croslin actually draw the inference of substantial risk of serious harm to Ward?

Ward's pleadings, liberally construed, suggest Croslin may have known that Ward had "snitched" on Massennelli. Assuming Croslin knew this fact, it does not follow that this single fact was a sufficient basis for Croslin to believe that Ward faced a substantial risk of serious harm on February 1, 2015. Indeed, it appears from Ward's version of the incident that *he* did not necessarily believe he faced a substantial risk of serious harm from Massennelli until after the attack occurred, as he did not object to Croslin leaving him in the care of Massennelli, nor had Ward alerted any IDJ officials to such a possibility. If Ward did not sense this risk, it follows that Croslin would be even less likely to infer the risk. There is no allegation that Croslin conspired[1] with Massennelli, and Ward states that Croslin would have prevented the attack had he been there, and that Croslin came to his aid when the attack occurred. The two questions posed by the language from the *Farmer* case must be answered in the negative – Croslin did not know of facts which would lead him to believe Ward faced a substantial risk of serious harm, and he did not actually infer that such a risk was present. As a result, Croslin is entitled to judgment as a matter of law.

---

[1]Even if Ward had alleged a conspiracy, "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Deck v. Leftridge*, 771 F.2d 1168 (8th Cir. 1985) (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983). At the very least, a plaintiff must allege that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding, and provide some facts suggesting such a 'meeting of the minds.' *Deck v. Leftridge, supra*. Ward alleged no factual basis for the existence of a conspiracy between Massennelli and Croslin.

*Immunity:* Ward sued Croslin in both his official and personal capacity. Croslin is correct in contending that he is entitled to sovereign immunity in his official capacity. Because a suit against defendant in his official capacity is in essence a suit against the State of Arkansas, any official capacity claim for monetary damages against him is barred by the doctrine of sovereign immunity and should be dismissed. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). As a result, the motion for summary judgment should also be granted as to the claims against Croslin in his official capacity.

*Qualified Immunity:* Croslin correctly notes he is entitled to qualified immunity when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, the conduct of Croslin, construed in the light most favorable to Ward, simply shows that he left Ward in the care of another correctional officer. This conduct does not establish a violation of a constitutional or statutory right of Ward's. Further, Ward does not show that Croslin would have known that his actions were unlawful. Therefore, Croslin is also entitled to judgment based upon qualified immunity.

### IV. Conclusion

Croslin's motion for summary judgment is granted, and the complaint is dismissed with prejudice.

DATED this 18th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE